# EXHIBIT 20



August 15, 2022

**CONFIDENTIAL**
*Via Email Only*

Tyler Young
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, TX 77002
Tyoung@yettercoleman.com

Re: *Parker, et al. v. Souki*, Case No. 22-cv-00165-WJM-MDB

Counsel:

We write in response to your letter dated August 8, 2022 regarding the meet-and-confer held on July 22, 2022 and addressing other discovery issues in the above-captioned matter. We disagree with a number of the positions in your letter.

We note that during the July 22, 2022 meet-and-confer, you represented to Plaintiffs that you would send a letter with Defendant's final positions shortly thereafter. Defendant did not send that letter until August 8, 2022—*over two weeks* after the meet-and-confer. Further, during that same discussion, the parties agreed that once Defendant had finalized his positions, they would have another meet-and-confer to discuss a set of mutually agreeable search terms to identify documents and communications responsive to the parties' discovery requests. Your delayed letter has hampered that process.

Because the parties have not met and conferred on search terms, Plaintiffs have not been able to complete their document collection and review. However, to demonstrate Plaintiffs' desire to move the discovery process forward, Plaintiffs did make a production of documents on August 2, 2022. Although that production did not include emails,[1] the review of Plaintiffs' communications is underway and, as explained above, is only not complete because of Defendant's delay in finalizing search terms. Plaintiffs hope to make a substantial document production prior to the August 31, 2022 status conference, assuming the parties promptly agree to a set of search terms.

While Plaintiffs continue to believe that the parties will be able to complete fact discovery prior to the October 31, 2022 deadline and intend to make efforts to do so, it is questionable if Defendant is of the same mindset as he has "expressed concern" over meeting that deadline since his first discovery-related correspondence on June 27, 2022, has raised it again with almost three

---

[1] Your letter incorrectly asserts that "Plaintiffs have not produced a single responsive email nearly three months after we served our requests for such materials." Plaintiffs' first production included responsive emails.



months left in the discovery period, and continues to resist producing documents responsive to Plaintiffs' document requests based on meritless and legally unsupported relevance objections.

Plaintiffs' responses to Defendant's positions as to the specific discovery requests are set forth below, but Plaintiffs note that "the scope of discovery in a federal lawsuit is relatively 'broad' or 'wide-ranging,'" *Howards v. Reichle*, 2009 WL 10676995, at \*3 (D. Colo. Mar. 2, 2009), and "the definition of relevance is broadly construed for discovery purposes." *Stanton v. Encompass Indemn. Co.*, 2013 WL 2423094, at \*1–2 (D. Colo. June 4, 2013). "[T]he party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 359 (D. Colo. 2004) (citation omitted). Importantly, "discovery should not be prohibited merely because it relates to claims that the defense asserts are based on an insufficient theory." *Rehberg v. City of Pueblo*, 2011 WL 2180659, at \*4 (D. Colo. June 2, 2011).

Defendant's bare assertions of irrelevance while citing to Federal Rule of Civil Procedure 26 do not meet this burden.

**TIME PERIOD**

Plaintiffs agree that January 1, 2019 through April 12, 2022 is an acceptable time period for the majority of the discovery requests; however, because the relationship between Defendant and Plaintiffs began in 2017, Plaintiffs maintain that the relevant time period for Requests Nos. 1, 3, 4, 8, 11, 13, and 17 should be January 1, 2017 through April 12, 2022. For the remainder of the discovery requests, Plaintiffs reserve their rights to seek the production of documents and communications prior to January 1, 2019 should information become available during the discovery process indicating that responsive documents exist before that date.

Plaintiffs remain willing to meet-and-confer regarding this proposal.

**REQUEST NO. 1**

The relevant time period for Request No. 1 is addressed above.

**REQUEST NO. 2**

Plaintiffs do not agree that this request is "overbroad, unduly burdensome, and disproportionate to the needs of the case" because it is directly related to allegations contained in the Amended Complaint. *See* Am. Compl. ¶¶ 27, 28, 41. We appreciate Defendant's willingness to meet-and-confer regarding search terms and look forward to doing so.

**REQUESTS NO. 3 and 7**

Defendant continues to resist disclosure of documents and communications that relate to the sale or purchase of Defendant's Tellurian stock, arguing that the fact of those purchases and sales are publicly disclosed and are otherwise "not relevant to whether there was a valid offer or acceptance." However, such information is relevant to the action because, given Defendant's large share ownership, his purchases and sales of Tellurian securities could have impacted Tellurian's



share price—an issue of central concern in this action. Further, Defendant's Tellurian's holdings are relevant to his ability to fulfill certain of his financial obligations and, therefore, his present intention when forming both the August 2019 and February 2021 contracts with Plaintiffs. And finally, even if public records provided information sufficient for Plaintiffs to understand Defendant's Tellurian transaction history (which it does not, as further discussed below), Defendant has given no reason why *communications* concerning those transactions, which are not available in the public domain, are not relevant. Therefore, Defendant has not met his burden of demonstrating this information is not relevant.

Turning to the publicly available information regarding Defendant's Tellurian transactions, Plaintiffs have identified certain discrepancies. For example, on June 10, 2020, Defendant filed a Form 4 with the Securities & Exchange Commission (SEC) reflecting his ownership of an additional 125,786 shares of Tellurian stock, bringing his total beneficial ownership to 28,659,639 shares. The proxy statement filed by Tellurian on April 29, 2021 reports that Defendant was still the beneficial owner of 28,659,639 shares of Tellurian common stock on that date. However, the definitive proxy statement filed on April 28, 2022 reflects Defendant's beneficial ownership of 29,992,972 shares of Tellurian common stock, including 3,333,333 shares subject to options exercisable within 60 days of April 25, 2022. A Form 4 reflecting the sale/purchase of common stock by Defendant that reconciles these numbers has not been filed.

Please explain these discrepancies and produce all relevant documentation. We remain willing to meet and confer regarding these requests.

**REQUEST NO. 4**

As discussed on the meet-and-confer call, "Tellurian Shares" is a defined term and therefore, the request as drafted is not overly broad. In any event, Plaintiffs reserve their rights to request that Defendant run additional search terms other than "Parker" or "Red Mango" if information becomes available during the discovery process indicating that those terms failed to identify all responsive documents.

**REQUEST NO. 5**

Plaintiffs do not agree that the search terms "Parker" or "Red Mango" are sufficient to identify all documents responsive to this request. We also request that you run search terms that capture communications describing a guaranty (or guarantee) given that Defendant could have been communicating about the alleged agreements without specifically naming Plaintiffs.

We remain willing to meet-and-confer regarding this request.

**REQUEST NO. 8**

Plaintiffs reserve their rights to request that Defendant run additional search terms other than "Parker" or "Red Mango" if information becomes available during the discovery process indicating that those terms failed to identify all responsive documents.



**REQUEST NO. 9**

Similar to Request No. 7, Defendant argues that this request is satisfied by publicly available information, and any "non-public documents or communications regarding the sale are not relevant or proportional to the needs of this case." Plaintiffs maintain that this request is relevant and proportional to the needs of the case as propounded, and that publicly available information is not sufficient.

First, the request calls for all documents and communications concerning Defendant's pledge of 26,000,000 shares of Tellurian common stock. While the fact that Defendant pledged 26,000,000 shares as part of a collateral package is publicly available, other loan documentation and Defendant's communications are plainly not publicly available. Second, documents and communications concerning Defendant's liabilities are relevant to Defendant's present intention to fulfill his promises to Plaintiffs when he entered into the August 2019 and February 2021 agreements. Further, any factor that may have motivated Defendant to maintain the price of Tellurian stock, including protecting his pledged collateral, is relevant to this action. *See Farmland Partners Inc. v. Fortunae*, 2020 WL 12575073, at *5 (D. Colo. May 18, 2020) (finding that discovery related to motive and intent is relevant where those issues go to "the core of [plaintiff's] claim"); *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at *14 (D. Kan. Aug. 24, 1992) ("Proof of intent to deceive is ordinarily a matter of circumstantial, rather than direct, evidence. A wide range of evidence can be relevant in proving intent to defraud, including evidence of an ulterior motive. Expected financial reward or gain is neither implausible nor far-fetched as a possible motive . . . . ).

We remain willing to meet-and-confer regarding this request.

**REQUEST NO. 10**

Plaintiffs maintain that this request is relevant and proportional to the needs of the case as propounded. We appreciate Defendant's willingness to meet-and-confer regarding an appropriate set of search terms to identify documents and communications responsive to this request and look forward to doing so.

**REQUEST NO. 11**

Plaintiffs maintain that this request is relevant and proportional to the needs of the case as propounded. Whether Defendant made an "offer, suggestion, or proposal to indemnify, guarantee, or otherwise compensate" any person other than Plaintiffs goes directly to his ability to fulfill certain financial obligations and, therefore, his present intention when forming both the August 2019 and February 2021 contracts with Plaintiffs. Defendant's conclusory argument that whether he "made any offers, suggestions, or proposals to unrelated persons or entities has nothing to do with the alleged agreements between him and Plaintiffs" is not sufficient to meet his burden. *See Farmland Partners Inc.*, 2020 WL 12575073, at *5; *see also Fisher v. Household Life Ins. Co.*, 2012 WL 966043, at *7 (D. Kan. Mar. 21, 2012) (finding that instances or allegations of similar conduct on the part of defendant "are relevant discovery, particularly in a case alleging fraud").

We remain willing to meet-and-confer regarding this request.



**REQUEST NO. 12**

Plaintiffs maintain that this request is relevant and proportional to the needs of the case. First, the request calls for all documents and communications concerning Defendant's "exercise or contemplated exercise" of the Tellurian stock options granted to him in December 2020. While the fact that Defendant received the stock option grant is publicly available, other documentation and Defendant's communications about his "exercise or contemplated exercise" of the grant are plainly not publicly available. Second, the request is relevant as it goes to Defendant's present intention when he entered into the February 2021 agreement with Plaintiffs. Further, any factor that may have motivated Defendant to maintain or inflate the price of Tellurian stock, including the possible exercise of his stock options, is also relevant to this action. *See Farmland Partners Inc.*, 2020 WL 12575073, at \*5; *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at \*14.

We remain willing to meet-and-confer regarding this request.

**REQUEST NO. 14**

Plaintiffs maintain that this request is relevant and proportional to the needs of the case. Moreover, Plaintiffs disagree that the search terms "Parker" and "Red Mango" will identify all documents and communications responsive to this request. The complaint specifically alleges that Defendant reassured Plaintiffs that he was "not selling" his shares of Tellurian stock even after he was forced to liquidate a large number of shares in late February and early March 2020. Am. Compl. ¶ 36. At this same time, his co-founder Martin Houston, was selling large volumes of Tellurian stock. *Id.* Communications with Houston "concerning the sale or contemplated sale of shares of any class of Tellurian stock" will yield relevant information about Defendant's state of mind when he made certain representations to Plaintiffs. *See Farmland Partners Inc.*, 2020 WL 12575073, at \*5; *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at \*14.

We remain willing to meet-and-confer regarding this request, including the relevant time period.

**REQUESTS NO. 15 and 16**

Plaintiffs maintain that these requests are relevant and proportional to the needs of the case as propounded. These requests are relevant as they go to Defendant's present intention to fulfill the promises he made to Plaintiffs in August 2019 and February 2021. Further, any factor that may have motivated Defendant to maintain or inflate the price of Tellurian stock, including potential or pending transactions between his company and others, is relevant to this action. *See See Farmland Partners Inc.*, 2020 WL 12575073, at \*5; *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at \*14.

We remain willing to meet-and-confer regarding this request.

**REQUEST NO. 17**

Defendants' representation that "Plaintiffs offered for Defendant to redact personal lunches" is an oversimplification of Plaintiffs' good faith attempt to narrow the request to only relevant and non-personal information. In any event, Plaintiffs accept your proposal to produce electronic calendar invitations responsive to the forthcoming set of agreed upon search terms. However,



Plaintiffs reserve their rights to request further discovery should information become available during the discovery process that the search terms have not identified all responsive documents.

**REQUESTS NO. 18-20**

Plaintiffs maintain that these requests are relevant and proportional to the needs of the case. These requests are relevant as they go to Defendant's ability to perform the financial obligations agreed to in the August 2019 and February 2021 agreements, and therefore, his present intention to fulfill those promises when made. *See Null v. Nat'l Ass'n of Certified Home Inspectors*, 2012 WL 5835371, at *2 (D. Colo. Nov. 16, 2012) (allowing discovery into defendant's financial information on an allegation of fraud); *Malbco Holdings, LLC v. Patel*, 2015 WL 4773202, at *2 (D. Or. Aug. 12, 2015) (denying motion to quash requests for "general financial data" when information regarding solvency went directly to question of "fraudulent intent").

Defendant's argument that his financial information is "unrelated to whether the parties entered into the alleged agreements several years ago, whether the alleged agreement was enforceable, or any alleged misrepresentations" misses the point. Although Defendant repeatedly frames his objections in the context of the breach of contract claim, he ignores Plaintiffs' fraud allegations. And allegations of fraudulent inducement support "a broader scope of discovery than allegations of a garden-variety contract dispute." *Fisher*, 2012 WL 966043, at *1.

We remain willing to meet-and-confer regarding these requests, including the relevant time period and document types responsive to these requests.

***

Defendant has improperly refused to produce documents responsive to nearly half of the discovery requests propounded by Plaintiffs, often arguing that the requests do not seek relevant information. To the extent Defendant continues to maintain relevance objections, please provide us with further legal support. We remain optimistic that the meet-and-confer process will be productive and that the parties will come to a compromise regarding many, if not all, of these requests. If Defendant continues to refuse to produce documents and communications responsive to Plaintiffs' reasonable discovery requests, we will bring this dispute to the Court's attention.

Sincerely,

*/s/ Lauren M. Goldman*

Lauren M. Goldman

BOIES SCHILLER FLEXNER LLP
(212) 303-3641
Lgoldman@bsfllp.com