**Plaintiffs Christopher Parker and Red Mango Enterprises, Ltd.'s Chart**
**in Support of their Motion to Compel**[1]

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| **Request for Production No. 19**: Documents sufficient to show Your net worth, including monetary and investment assets.<br><br>**Request for Production No. 20**: Documents sufficient to show Your liquidity during the Relevant Period | RFPs 19 and 20 are narrow in that they only seek "documents sufficient to show," and Plaintiffs have offered to protect Defendant's financial information by labeling the documents "Attorneys' Eyes Only" pursuant to the Protective Order in this case. *See* ECF No. 30. Mr. Parker's financial information (including monthly statements reflecting his assets) has already been produced in this case and designated Attorneys' Eyes Only. Plaintiffs seek documents sufficient to show Defendant's net worth and liquidity during the relevant time period of August 1, 2019 through December 31, 2021.<br><br>The Court has previously determined that the requests are relevant as they go to Defendant's state of mind and ability to satisfy the alleged guarantee. *See, e.g.*, Ex. 6 (Sept. 26, 2022 Hrg. Tr.) at 59:21-60:2 (discussing RFPs 18, 19, and 20: "I am persuaded . . . that this isn't just relevant to those two issues . . . [i]t's relevant to other portions of the case as well"); Ex. 4 (Nov. 8, 2022 Hrg. Tr.) at 22:19-23 (discussing RFPs 19 and 20: "Well, let me just be really clear about the relevance piece. I do believe that his personal—or his ability to satisfy the alleged guarantee that he made is relevant to this case"); *id.* at 32:21-33:17 (in discussing the financial information, "I've already decided that that's relevant").<br><br>Financial information is discoverable, especially in light of a fraud claim. *See Null v. Nat'l Ass'n of Certified Home* |

---

[1] Plaintiffs incorporate by reference all arguments made in the Motion filed herewith.

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | *Inspectors*, 2012 WL 5835371, at *2 (D. Colo. Nov. 16, 2012) (allowing discovery into defendant's financial information on an allegation of fraud); *Malbco Holdings, LLC v. Patel*, 2015 WL 4773202, at *2; (D. Or. Aug. 12, 2015) (denying motion to quash requests for "general financial data" when information regarding solvency went directly to question of "fraudulent intent"). |
| | Documents showing Defendant's net worth and liquidity go directly to Defendant's motivations to enter into the alleged agreements, and not only his present intention not to fulfill his promises to Plaintiffs when made, but also his ability to fulfill them when the guarantees came due. *See Farmland Partners Inc. v. Fortunae*, 2020 WL 12575073, at *5 (D. Colo. May 18, 2020) (finding that discovery related to motive and intent is relevant where those issues go to "the core of [plaintiff's] claim"); *United States ex rel Brooks v. Stevens-Henager Coll., Inc.,* 2018 WL 296088, at *5 (D. Utah Jan. 4, 2018) (circumstantial evidence of "intent not to comply" with agreements was discoverable to prove fraudulent inducement claims, and a defendant cannot "block discovery bearing on [the] defense" that it "lacked the requisite intent not to comply"); *see also Fisher v. Household Life Ins. Co.*, 2012 WL 966043, at *7 (D. Kan. Mar. 21, 2012) ("Allegations that defendants fraudulently induced plaintiffs . . . supports a broader scope of discovery than allegations of a garden-variety contract dispute."); *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at *14 (D. Kan. Aug. 24, 1992) ("Proof of intent to deceive is ordinarily a matter of circumstantial, rather than direct, evidence. A wide range of evidence can be relevant in proving intent to defraud, including evidence of an ulterior motive. Expected financial reward or gain is neither implausible nor far-fetched as a possible motive . . . ."). |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | Moreover, information about Defendant's net worth and liquidity is necessary to prove the scale and nature of the benefit conferred on Defendant by Plaintiffs' agreement to refrain from selling their shares in Tellurian for purposes of the unjust enrichment claim. *United States v. Copar Pumice Co., Inc.*, 2012 WL 12910522, at *4 (D.N.M. June 18, 2012) (finding claim of unjust enrichment a particularly "solid basis" for disclosure of sensitive financial information). The Colorado Supreme Court has held that avoidance of loss also constitutes enrichment. Analysis of Defendant's net worth and liquidity over time could reveal losses that Defendant avoided. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093, 1097 (Colo. 1982) ("A person confers a benefit . . . not only where he adds to the property of another, but also where he saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage.") (citation omitted). <br><br> Any privacy concern over Defendant's financial records does not outweigh the necessity of this discovery. A privacy interest does not shield otherwise proper discovery. *See Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 385 (D. Colo. 2000) ("The [discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action.") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984)) (alteration original); *see also Est. of Lillis by & through Lillis v. Bd. of Cnty. Comm'rs of Arapahoe Cnty.*, WL 3067289, at *3 (D. Colo. July 12, 2019) ("The fact that the discovery sought by Plaintiffs might be confidential does not automatically shield it from the scope of permissible discovery pursuant to Fed. R. Civ. P. 26(b)(1)."); |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | *Lobato v. Ford*, 2007 WL 3342598, at *4 (D. Colo. Nov. 9, 2007) ("The protection for privileged information afforded by Rule 26(b)(1) does not extend to 'confidential' information.")<br><br>Rather, the proper protection of private or confidential information is through a protective order such as the one already in place in this case, ECF No. 30. *See James v. Heuberger Motors, Inc.*, 2011 WL 334473, at *4 (D. Colo. Jan. 28, 2011) (compelling production of financial documents and information, observing that "Defendant has not shown why its confidentiality concerns cannot be addressed in a protective order"); *see also Meeker v. Life Care Centers of Am., Inc*, 2015 WL 4400533, at *4 (D. Colo. July 20, 2015) (compelling production of confidential information under protective order).<br><br>Defendant should be compelled to produce sufficient documents in response to these requests. The Court has directed Defendant multiple times to produce this relevant information and warned that if he could not "come up with" a way to protect the information himself, "the Court is going to have to order discovery in a way that's probably more fulsome than [he] might want." Ex. 4. (Nov. 8, 2022 Hrg. Tr.) at 24:22-25:4. |
| **Interrogatory No. 3**: Identify all financial institutions, brokerage firms, banks, trusts, and trading companies that have been involved in the acquisition, divestiture, and/or housing of Tellurian Securities on Your behalf and/or on behalf of any entity with which you are, were, or have been affiliated. For each such institution, Your answer should include (a) the name, address, and phone number of the institution, and (b) the name(s) and account number(s) associated with each account at each such institution that relate to the Tellurian Securities. | Plaintiffs require this information to understand where and how Defendant held his shares of Tellurian stock, and to issue third-party subpoenas to Defendant's financial institutions and/or trusts regarding his Tellurian transactions, if necessary. *Res. Assocs. Grant Writing & Evaluation Servs., LLC v. Maberry*, 2008 WL 6045496, at *1 (D.N.M. Oct. 22, 2008) ("[T]he Federal Rules of Civil Procedure do not provide for a priority or for a sequencing of discovery, the Court will not interfere with the parties' use and scheduling of different discovery forms."). |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | Defendant has not been forthcoming in disclosing this relevant information in response to Plaintiffs' Interrogatories 1 and 2 (subparts (e)). While public records reveal certain information about Defendant's Tellurian transactions, what financial institutions were involved is not publicly available.<br><br>Defendant requested similar information from Plaintiffs with regard to their Tellurian transactions, and Plaintiffs provided that information. As a result, Defendant was able to serve a third party subpoena on Plaintiffs' bank, UBS, and receive hundreds of responsive documents. |
| **Interrogatory No. 4.** Identify all legal, investment, and/or financial professionals, advisors, consultants, and/or firms with whom you and/or your representatives, agents, or employees have consulted regarding Tellurian, Tellurian Securities, the Agreements, strategies related to buying or selling of Tellurian Securities, and/or strategies or options for protecting against or minimizing any risks associated with owning or trading Tellurian Securities. Your answer should include each such person or entity's name, address, telephone number, and email address, as well as the dates on which you consulted each of them regarding the subject matter described herein. | In response to this Interrogatory, Defendant stated that he had "consulted no persons regarding the 'Agreements' because there was no agreement." *See* Ex. 3 at 8.<br><br>First, Defendant failed to respond to the entirety of the Interrogatory and therefore, it is insufficient. Second, simply because Defendant disputes the legal theory under which Plaintiffs are proceeding (i.e. the existence of the alleged agreements), does not relieve him of the obligation to respond to discovery requests. *See Rehberg v. City of Pueblo*, 2011 WL 2180695, at *4 (D. Colo. June 2, 2011) ("[D]iscovery should not be prohibited merely because it relates to claims that the defense asserts are based on an insufficient theory."). Third, the information sought is important to Plaintiffs to understand if there are any third parties from which they should seek discovery and/or to provide further context to any documents produced in discovery. Finally, Defendant propounded an almost identical interrogatory upon Plaintiffs to which Plaintiffs fully responded, |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | providing the names of five individuals at four financial institutions. |
| **Request for Production No. 7:** All Documents and Communications Relating to the sale of any class of Tellurian shares made after March 2020, including the sale of over 21,000,000 shares as described in the Form 13D filed with the Securities and Exchange Commission on or about March 5, 2020.<br><br>**Request for Production No. 9**: All Documents and Communications Relating to Your pledge of 26,000,000 shares of Tellurian common stock as part of a collateral package to secure a loan for certain real estate investments as described in the Form 13D filed with the Securities and Exchange Commission on or about March 5, 2020.<br><br>**Request for Production No. 21:** All Documents and Communications Relating to Your pledges of Tellurian common stock as part of collateral packages to secure loans for certain real estate investments, including: (1) the pledge of 25,000,000 shares of Tellurian common stock as part of a collateral package to secure a loan for certain real estate investments as described in the Tellurian Proxy Statement (Form 14A) filed with the Securities and Exchange Commission on or about April 29, 2019 and Form 13D filed with the Securities and Exchange Commission on or about March 5, 2020; (2) the pledge of 23,000,000 shares of Tellurian common stock by the Souki Family 2016 Trust as part of a collateral package to secure financing for various investments as described in the Tellurian Proxy | Plaintiffs seek documents and communications regarding Defendants' loans and pledges of Tellurian stock between August 1, 2019 and December 31, 2021, as well as documents and communications relating to any forced sales of Tellurian stock in or after March 2020 through December 31, 2021.<br><br>Information about Defendant's various financial liabilities goes to the heart of Defendant's motivation to enter into the alleged agreements at issue and maintain the price of Tellurian stock. Indeed, the Court has already held that information regarding Defendant's loans and sales of stock are relevant and proportional to the needs of the case. *See* Ex. 4 (Nov. 8, 2022 Hrg. Tr.) at 48:1-12 ("With respect to the loan, the reason I view that as relevant, and the information with respect to the loan, the selling of stock, potentially the trust, as well that, to me goes to the motivations around Tellurian . . . ."); *id.* at 50:18-24 ("But communications about the loan . . . seem reasonable and proportionate to this case.").<br><br>This information is also necessary to demonstrate that Defendant lacked the intention to fulfill his promises to Plaintiffs when he entered into the alleged agreements, as well as the ability to pay on the guarantees when they came due. *See Farmland Partners Inc.*, 2020 WL 12575073, at *5; *United States ex rel Brooks*, 2018 WL 296088, at *5; *see also Fisher*, 2012 WL 966043, at *7; *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at *14.<br><br>Moreover, information about Defendant's liabilities is also necessary to prove the scale and nature of the benefit conferred |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| Statement (14A) filed with the Securities and Exchange Commission on or about April 29, 2019; and (3) the pledge of 26,000,000 shares of Tellurian common stock by the Souki Family 2016 Trust as described in the Form 13D filed with the Securities and Exchange Commission on or about March 5, 2020.<br><br>**Interrogatory No. 10**: Describe every loan that You have secured during the Relevant Period, including loans for which You pledged Tellurian Securities. For each loan (a) state the name, address, and telephone number of every person, entity or financial institution from which You secured the loan, (b) the date on which the loan was secured, (c) the nature of the liability such as whether it was personal or on behalf of an entity with which You are affiliated, (d) the value of the loan, and (e) any collateral securing the loan, including Tellurian Securities. | on Defendant by Plaintiffs' agreement to refrain from selling their shares in Tellurian for purposes of the unjust enrichment claim. *See Copar Pumice Co., Inc.*, 2012 WL 12910522, at *4. The Colorado Supreme Court has held that avoidance of loss also constitutes enrichment. This discovery would shed light on losses that Defendant avoided, such as possibly not defaulting on his loans. *See Cablevision of Breckenridge, Inc.*, 649 P.2d 1093 at 1097.<br><br>Any privacy concern over Defendant's loan information does not outweigh the necessity of this discovery to Plaintiffs. Indeed, the Court has already concluded that the relevance of this information outweighs any privacy interest. Ex. 6 (Sept. 26 Hrg. Tr.) at 66:21-67:1.<br><br>In any event, a privacy interest does not shield otherwise proper discovery. *See Gillard*, 196 F.R.D. at 385; *see also Est. of Lillis by & through Lillis*, WL 3067289, at *3; *Lobato*, 2007 WL 3342598, at *4. Rather, the proper protection of private or confidential information is through a protective order such as the one already in place in this case, ECF No. 30. *See James*, 2011 WL 334473, at *4; *see also Meeker*, 2015 WL 4400533, at *4.<br><br>Further, Defendant has put his loan information at issue in a publicly filed complaint in New York State Supreme Court. *See* Ex. 9. Defendant's complaint bolsters Plaintiffs' need for additional discovery, especially into the terms and conditions of these loans. Any purported privacy concern is further diminished as a result.<br><br>Defendant should be compelled to produce responsive documents, as well as provide a fulsome response to |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | Interrogatory 10 so Plaintiffs may pursue third party discovery from Defendant's loan providers to the extent necessary. *See Maberry*, 2008 WL 6045496, at \*1. |
| **Request for Production No. 18**: Documents Relating to the Souki Family 2016 Trust.<br><br>**Interrogatory No. 8**: Identify all trusts that have held any of Your Tellurian Securities. Your answer to this interrogatory should include (a) each such trust's name, address, telephone number, email address, place of formation, and (b) the names, addresses, phone numbers, and email addresses of each trustee and beneficiary of each such trust. | Plaintiffs have narrowed the scope of RFP 18 and are only seeking documents that show the Souki Family 2016 Trust's corpus and how Tellurian stock is held within the trust, as well as documents relating to Defendant's roles and responsibilities in the trust.<br><br>Defendant was a beneficial owner of the trust, and its trustee, through March 2020. Plaintiffs only seek documents in response to this RFP between August 1, 2019 and March 31, 2020. Indeed, Plaintiffs have produced parallel information with regard to Mr. Parker's trust. The Court has already held that information regarding Defendant's family trust, and particularly Tellurian stock held within it, is relevant to Plaintiffs' claims. *See* Ex. 6 (Sept. 26, 2022 Hrg. Tr.) at 59:21-60:2; Ex. 4. (Nov. 8, 2022 Hrg. Tr.) at 48:1–12.<br><br>Understanding Defendant's role in the trust, his power over it, his beneficial ownership of its corpus, and how Tellurian stock fit into the picture goes to the heart of Defendant's motivations for entering into the alleged agreements at issue. Further, information about the Tellurian stock held in the Souki Family 2016 Trust is particularly important as millions of Tellurian shares were pledged by Defendant and the trust as part of a collateral package to secure loans. Defendant's various financial liabilities, including those tied to the trust, were likely a key motivating factor in his decision to enter into the alleged agreements with Plaintiffs, and are also important to prove Defendant's present intention not to fulfill his promises to |

| DISCOVERY REQUEST | PLAINTIFFS' POSITION (Summarized)[2] |
|---|---|
| | Plaintiffs.  *See Farmland Partners Inc.*, 2020 WL 12575073, at *5; *United States ex rel Brooks*, 2018 WL 296088, at *5; *see also Fisher*, 2012 WL 966043, at *7; *Koch*, 1992 WL 223816, at *14. |
| | Any privacy concern over Defendant's trust information does not outweigh the necessity of this discovery to Plaintiffs.  A privacy interest does not shield otherwise proper discovery.  *See Gillard*, 196 F.R.D. at 385; *see also Est. of Lillis by & through Lillis*, WL 3067289, at *3; *Lobato*, 2007 WL 3342598, at *4. |
| | Rather, the proper protection of private or confidential information is through a protective order such as the one already in place in this case, ECF No. 30.  *See James*, 2011 WL 334473, at *4; *see also Meeker*, 2015 WL 4400533, at *4. |
| | Defendant should be compelled to produce this narrow set of trust documents in his possession from the time he was a trustee and/or beneficial owner of the trust.  He should also be compelled to completely respond to Interrogatory 8 so Plaintiffs may pursue third party discovery from the trust to the extent necessary.  *See Maberry*, 2008 WL 6045496, at *1. |