# Exhibit 10

# FILED UNDER SEAL

| | |
|---|---|
| **From:** | Chris Parker <chris.parker@asianlogic.com> |
| **Sent:** | Friday, February 19, 2021 5:06 PM |
| **To:** | Charif Souki |
| **Subject:** | Fwd: Tellurian Shares [MA11001026] |
| **Attachments:** | Tellurian Shares - Put Agreement (BSF 2.18.21) v3.2.docx; ATT00004.htm |

Hi Charif

Pls see attached the agreement the lawyers have proposed that covers our position and concerns.

I was planning to come up today but the pilots have said the storm is a potential problem for us so I've decided to stay back and will come up next week for a day to sit down with you

Have a good weekend

Sent from Chris Parker's iPhone

Begin forwarded message:

> **From:** Jonathan Schiller <jschiller@bsfllp.com>
> **Date:** 18 February 2021 at 8:20:07 PM GMT-8
> **To:** Chris Parker <chris.parker@asianlogic.com>
> **Cc:** George Liu <gliu@bsfllp.com>, "Matthew L. Schwartz" <mlschwartz@bsfllp.com>
> **Subject: Tellurian Shares [MA11001026]**

Chris,

Enclosed please find an agreement we propose for your Aspen meeting this weekend. Please don't hesitate to write or call with any questions or concerns.

We can make any desired adjustments and have a revised agreement for you to print in Aspen as practical.

Best,

Jonathan

**Jonathan D. Schiller**
Managing Partner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(m) +1 212 446 2300
(d) +1 212 446 2388

1

CONFIDENTIAL

PLAINTIFFS_00000232

jschiller@bsfllp.com
www.bsfllp.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

2

jschiller@bsfllp.com
www.bsfllp.com

CONFIDENTIAL    PLAINTIFFS_00000233

BSF DRAFT 2/18/2021
Privileged and Confidential

## PUT OPTION AGREEMENT

This Put Option Agreement (the "Agreement"), dated as of [February] [DAY], 2021 (the "Effective Date"), is made between Red Mango Enterprises Limited, a British Virgin Islands corporation ("Holder"), and Charif Souki, an individual resident at [RESIDENCE ADDRESS] ( "Souki").

WHEREAS, Holder as of the date hereof owns the shares of common stock ("Common Stock"), par value $0.01 per share, of Tellurian Inc., a Delaware corporation (the "Company").

WHEREAS, Souki is the Executive Chairman of the Board of Directors of the Company; and

WHEREAS, Souki has agreed to grant Holder a put option to sell to Souki all or any portion of 5,881,238 shares of Common Stock owned by Holder (the "Put Shares") and Souki has agreed to purchase such Put Shares on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises contained herein and of other good and valuable consideration, including the covenant and undertaking by Holder under Section 6 below, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.      **Put Option**.  At any time between the Effective Date and December 31, 2021 (the "Option Period"), Holder may exercise a put option (the "Put Option") to Souki of all or any portion of the Put Shares, as determined by Holder in its sole discretion, up to a maximum of 5,881,238 shares, and Souki shall purchase those shares from Holder on the price and terms set forth herein.

2.      **Exercise of Put Option**.  The Put Option shall be exercised by a written and dated notice (the "Written Notice") to Souki demanding that Souki purchase the Put Shares pursuant to the provisions of this Agreement.  If the Put Option is exercised, the closing of the purchase and sale of the Put Shares shall occur within ten (10) business days of the date of the Written Notice.

3.      **Purchase Price**.  The purchase price (the "Purchase Price") for Put Shares shall be $[8.3441] per Put Share, increasing by [one (1) month LIBOR plus 0.167%] per calendar month after the Effective Date, plus an amount to indemnify Holder for any taxes on the sale of the shares.

CONFIDENTIAL

4.      **Closing**.  At the closing (the "Closing") (i) Souki shall pay the Purchase Price by wire transfer of immediately available funds to a bank account designated by Holder prior to the Closing, and (ii) Holder shall deliver to Souki the Put Shares free and clear of any and all mortgages, pledges, security interests, options, rights of first offer, encumbrances or other restrictions or limitations, except as applicable Federal Securities Laws applicable to private resales and to Souki given his capacity with the Company.  Holder shall be deemed to have delivered the Put Shares by giving instruction to the Company to effectuate such delivery and transfer, and Souki shall give his reasonable cooperation to effect such delivery.

5.      **Adjustment Provisions**.  If the Company shall, after the Effective Date,

(a)      pay a stock dividend or make a distribution with respect to the Common Stock in shares of Common Stock;

(b)      subdivide or split the outstanding shares of Common Stock into a greater number of shares of Common Stock; or

(c)      combine the outstanding shares of Common Stock into a smaller number of shares of Common Stock;

then, in each such case, the Purchase Price shall be adjusted by dividing Purchase Price by a dilution adjustment equal to the fraction, (x) the numerator of which shall be the number of shares of Common Stock outstanding immediately after the effective time of the adjustment relating to such event (giving effect to such event as of such effective time), and (y) the denominator of which shall be the number of shares of Common Stock outstanding immediately prior to the effective time of the adjustment relating to such event (the "Dilution Adjustment"). The Dilution Adjustment shall be effected immediately after 5:00 p.m., New York City time, on the date fixed for determination of the holders of Common Stock entitled to receive such dividend or distribution or the effective date of such subdivision, split or combination, as applicable.

6.      **Option Period Sales Restriction**.  During the Option Period, Holder shall not sell any shares of Common Stock on the open market  to a third party for a per share amount less than the Purchase Price per Put Share as determined pursuant to this Agreement.

7.  **Miscellaneous**.

(a)      All notices and other communications provided for in this Agreement, unless otherwise specified, shall be in writing and shall be given at the addresses set forth in the following sentence or at such other addresses as may be designated by notice duly given in accordance with this Section 7(a) to each other party to this Agreement.  Until such notice is given, (i) notices to Holder shall be directed to it as follows: Sovereign Trust (Hong Kong) Limited, Suites 1601-1603, Kinwick Centre, 32 Hollywood Road, Central Hong Kong S.A.R., ATTN: Penny Lee / RMEL; and (ii) notices to Souki shall be directed to it as follows: [NOTICE ADDRESS].  Each notice given shall be effective

CONFIDENTIAL

PLAINTIFFS_00000235

(x) if sent by certified mail (return receipt requested), 72 hours after being deposited in the United States mail, postage prepaid; (y) if given by telex or telecopier, when such telex or telecopied notice is transmitted (with electronic confirmation of transmission or verbal confirmation of receipt); or (z) if given by any other means, when delivered at the address specified in this Section 7(a).

(b)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York.  To the extent permitted by law, the unenforceability or invalidity of any provision or provisions of this Agreement shall not render any other provision or provisions contained in this Agreement unenforceable or invalid.

(c)    Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in New York, New York, under the Arbitration Rules and Procedures of Judicial Arbitration and Mediation Services, Inc. ("JAMS") before a single arbitrator agreed upon by the parties, or if no single arbitrator can be agreed upon, an arbitrator or arbitrators selected in accordance with the rules of the JAMS then in effect.  The proceedings will be confidential and conducted in English.  The arbitrator or arbitrators will have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve a disputed matter, and its award will be final and binding on the parties.  Judgment may be entered on the award of the arbitrator(s) in any court having jurisdiction.  The arbitrator(s) will determine how the parties will bear the costs of the arbitration.

(d)    This Agreement contains the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements, written or oral, with respect thereto.

(e)    Any provision of this Agreement may be amended or waived (either generally or in a particular instance and either retrospectively or prospectively) if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Holder and Souki or, in the case of a waiver, by the party against whom the waiver is to be effective.  No failure or delay by either party in exercising any right, power or privilege under this Agreement shall operate as a waiver of such right, power or privilege nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.  The rights and remedies provided in this Agreement shall be cumulative and not exclusive of any rights or remedies provided by law.

(f)    This Agreement and the rights and obligations of the parties under this Agreement may not be assigned or delegated by either party without the prior written consent of the other party, and any purported assignment without such consent shall be void.

CONFIDENTIAL                                                                              PLAINTIFFS_00000236

(g)     This Agreement is not intended and shall not be construed to create any rights in any person other than Holder and Souki and their respective successors and assigns and no person shall assert any rights as third party beneficiary under this Agreement.  Whenever any of the parties to this Agreement is referred to, such reference shall be deemed to include the successors and assigns of such party.  All the covenants and agreements contained in this Agreement by or on behalf of Holder and Souki shall bind and be enforceable by, and inure to the benefit of, their respective successors and assigns whether so expressed or not, and shall be enforceable by and inure to the benefit of Holder and Souki and their respective successors and assigns.

(h)     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original for all purposes hereof.

[*Signature page follows*]

4

CONFIDENTIAL

PLAINTIFFS_00000237

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered as of the first date set forth above.

HOLDER:

By: _____
[Sovereign Corporation (BVI Limited)
Mill Mall
Suite 6
Wickhams Cay 1
P.O. Box 3085
Road Town
Tortola
BVI]

SOUKI:

By: _____
Charif Souki
[ADDRESS]

[ANNEX A TO PUT OPTION AGREEMENT]