IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0165-WJM-MDB

CHRISTOPHER PARKER, and
RED MANGO ENTERPRISES LTD.,

    Plaintiffs,

v.

CHARIF SOUKI,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' RULE 702 MOTION**

---

Before the Court is Plaintiffs Christopher Parker and Red Mango Enterprises Ltd.'s ("Red Mango") (jointly, "Plaintiffs") Rule 702 motion to exclude ("Motion") certain testimony of Bryan D'Aguiar, Defendant Charif Souki's damages expert. (ECF No. ECF No. 155.) Souki filed a response, to which Plaintiffs filed a reply. (ECF Nos. 164, 166.) For the following reasons, the Motion is granted in part and denied in part.

## I.    BACKGROUND

The parties are familiar with the underlying facts of this case by way of the Court's Order denying Souki's motion to dismiss and its Order granting in part and denying in part the parties' cross motions for summary judgment. (ECF No. 102, 170.) The Court incorporates that background here.

## II.    APPLICABLE LAW

Federal Rule of Evidence 702 addresses expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Thus, Rule 702 requires the district court to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).

> Under Rule 702, the court must first decide whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion. *See* Fed. R. Evid. 702. Then 'the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*.' *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). 'Where an expert testifies based on experience, the tribunal reviews the reliability of the testimony with reference to 'the nature of the issue, the expert's particular expertise, and the subject of the testimony.' *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222 (10th Cir. 2018) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148–50, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

*Id.* at 770.

"[T]he manner in which the court conducts its Rule 702 analysis is left to the court's sound discretion." *United States v. Chapman*, 839 F.3d 1232, 1239 (10th Cir. 2016). Still,

> [t]he court, when faced with a party's objection, must

2

> 'adequately demonstrate by specific findings on the record
> that it has performed its duty as gatekeeper.' *United States
> v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). 'This
> gatekeeper function requires the judge to assess the
> reasoning and methodology underlying the expert's opinion,
> and determine whether it is scientifically valid and applicable
> to a particular set of facts.' *Goebel v. Denver & Rio Grande
> W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

*Bill Barrett*, 918 F.3d at 770.

### III.   ANALYSIS

Plaintiffs do not challenge D'Aguiar's qualifications generally but instead move to exclude his following opinions: (1) that "the alleged terms of the 2019 Agreement . . . was not supported by consideration"; (2) that Plaintiffs' damages must be reduced based on the value of Souki's performance under the alleged contracts because not doing so would "be unfair to" Souki; (3) opinions regarding Plaintiffs' cost basis; and (4) opinions "regarding possible strategies Plaintiffs may have undertaken to mitigate their damages." (*See generally* ECF No. 155.)  The Court agrees, in part, with Plaintiffs' contentions.

The Court starts with D'Aguiar's proffered opinions regarding consideration. Specifically, he seeks to testify that Plaintiffs paid no consideration for the alleged August 2019 and February 2021 agreements and that the August 2019 agreement did not obligate Plaintiffs to refrain from selling their shares. (*See generally* ECF No. 155-2.)  Plaintiffs argue that these opinions improperly state legal opinions and "usurp[] the jury's role." (ECF No. 155 at 3.)

The Court agrees that D'Aguiar may not opine that Plaintiffs did not provide consideration in exchange for Souki's alleged guarantees.  As explained in its summary judgment Order, whether the August 2019 contract was supported by consideration is a

3

disputed fact issue.  *See Herr v. Heiman*, 75 F.3d 1509, 1514 (10th Cir. 1996) ("In general, the failure of consideration is a question of fact for the jury to decide."); *see also Talley v. Washburn Univ.*, 2012 WL 1828926, at *4 (D. Kan. 2012) ("Generally, when the existence of consideration for a contract is controverted, the issue is one for the trier of fact.").  (ECF No. 170 at 12.)  An opinion purporting to definitively answer this question is tantamount to stating a legal conclusion and usurping the jury's fact-finding role.  Both of which are impermissible.  *See United States v. Richter*, 796 F.3d 1173, 1195–96 (10th Cir. 2015) (explaining that expert testimony may not "state legal conclusions drawn by applying the law to the facts") (cleaned up)*; see also Barlovento, LLC v. AUI, Inc.*, 2020 WL 6501532, at *3 (D.N.M. Nov. 5, 2020) ("[T]he Court will not permit this witness to offer legal conclusions or legal opinions about contractual responsibility."); *Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, 2024 WL 3950929, at *6 (D. Colo. Aug. 27, 2024) ("[A]n expert witness's testimony may not usurp the jury's fact-finding function.").

Definitively telling the jury that Plaintiffs did not supply consideration, however, is different than simply observing that Plaintiffs did not pay any money in exchange for the guarantee.  That seems to be an undisputed fact in this case.  (Although the Court notes that Plaintiffs maintain that they nonetheless conferred *other* financial value on Souki in exchange for the guarantee.)  Also distinct is testimony that the August 2019 texts did not expressly mention Souki's supposed expectation that Parker would retain his shares.  As these distinctions appear to support Souki's theory that consideration here is lacking, the Court will permit D'Aguiar to testify as to these straightforward observations.  *Cf. Am. Fid. Assurance Co. v. Bank of New York Mellon*, 2018 WL

4

11425417, at *3 (W.D. Okla. Mar. 16, 2018) ("It is true that an expert should not be permitted to give his legal opinions as to the legal obligations of the parties under a contract.").

Next, the Court addresses D'Aguiar's proffered opinion that any recovery must be reduced by the market values of the August 2019 guarantee and February 2021 put option agreement because not accounting for these "hidden value[s]" would be unfair to Souki.  (ECF No. 164 at 5.)  D'Aguiar's logic goes like this: "If the Defendant is found liable, I believe some adjustment is necessary to reflect the considerable value of the put when the Alleged Agreements originated."  (ECF No. 155-2 at 39.)  "Ignoring the value of the puts would be unfair to the Defendant," D'Aguiar reasons, because "Plaintiffs paid no consideration for such put options" and they would otherwise receive a "sizeable risk-free windfall."  (*Id.*)  D'Aguiar deploys the "Black-Scholes model" and some vague "Bloomberg tool" to value Souki's obligations under the agreements and then subtracts that figure from various damages amounts he calculates Souki may be liable for in the event of an adverse jury verdict.  (*Id.*)

These proffered damages reductions, however, are based on nothing more than D'Aguiar's subjective belief that the contracts Souki allegedly agreed to in this case were deals which were unfair to Souki.  That belief is wholly irrelevant and immaterial to the issues to be tried in this case, and will play no part in the jury's damages determination.  Souki cannot seek to offset his potential liability based on D'Aguiar's opinion that his obligations under the contracts—*i.e.*, the alleged guarantee and put option promise—are worth a lot of money.  There is simply no record evidence supporting the theory that the market value of the put option agreements should be

5

deducted from any damages amount the jury may return.  Consequently, D'Aguiar's opinions on this topic shall be excluded.  *See United States v. Gunn*, 2023 WL 2808109, at *12 (10th Cir. Apr. 6, 2023) ("Irrelevant expert testimony, even by a qualified expert, is inadmissible.").[1]

The Court will deny, however, the remaining balance of Plaintiffs' Motion.  As to cost basis, D'Aguiar calculates that the 676,072 shares Plaintiffs sold prior to the August 2019 agreement were worth $45,236,190 (or $8.4125 per share) in August 2019, which "is approximately $595,386 lower than the cost base calculated by" Plaintiffs' damages expert, Seth Fliegler.  (ECF No. 155-2 at 34.)  D'Aguiar says Fliegler "incorrectly accepted the cost base reported in the brokerage statement," which in turn "incorrectly added to the net cost of the remaining holdings."  (*Id.*)

Although Plaintiffs contend that D'Aguiar's methodology for calculating this cost basis is unreliable for a number of reasons—including because his calculation is based on the unsupported assumption that Plaintiffs sold their stock on a first in, first out basis—the Court concludes that such perceived deficiencies are better resolved on cross examination.  While the Court shares Plaintiffs' concern about D'Aguiar's methodology, especially given that it challenges the cost basis figures generated by well-established brokerage firms, the Court notes that D'Aguiar reached his opinions after reviewing "the total number of purchases" and "the total number of sales," which he says resulted in a "nice, clean history of all transactions on all accounts."  (ECF No. 164 at 8.)  Even assuming this methodology is subject to legitimate challenge, it does

---

[1] Given this conclusion, the Court need not decide whether D'Aguiar's methodology for reaching these offset amounts is reliable under *Daubert*.

not make his opinions fatally unreliable at this stage of this case. *See Bimbo Bakeries USA, Inc. v. Sycamore*, 2017 WL 1377991, at *2 (D. Utah Mar. 2, 2017) ("Excluding expert testimony is the exception rather than the rule, and often times the appropriate means of attacking shaky but admissible evidence is through vigorous cross-examination, and the presentation of contrary evidence."); *see also Saiz v. Jerome*, 2024 WL 3297156, at *6 (D. Colo. 2024) ("The relevant question is simply whether the expert considered enough information to make the proffered opinion reliable."); *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023) ("Establishing reliability does not require showing that the expert's testimony is "undisputably correct" or without uncertainty.").

The Court's conclusion is the same with respect to D'Aguiar's mitigation opinions. According to D'Aguiar, Plaintiffs could have mitigated their damages "by selling shares held in TELL at the same time he conducted sales in (i) January 2021 (when he sold over 109,250 shares), (ii) May 2022 (when he sold 1 million shares), or (iii) across all sales in 2022 (when he sold 2.16 million shares)." (ECF No. 155-2 at 48.) D'Aguiar adds that he "assume[s] the Plaintiffs would work with their brokers to structure a trading program to participate in volumes around the same period . . . ." (*Id.*)

Plaintiffs argue that such testimony "must be excluded because they are based on pure speculation." (ECF No. 171 at 9.) But here, too, Plaintiffs are free to cross-examine D'Aguiar on these and related subjects. To the extent Plaintiffs believe D'Aguiar's analysis as to whether a trading program would have reduced their damages was lacking in empirical support, this deficiency is fodder for vigorous cross examination. *See id.* ("*Daubert* states that potentially uncertain (or "shaky") evidence is

7

properly challenged at trial through cross-examination or with competing evidence.")

(quoting *Daubert*, 509 U.S. at 596).

## IV.   CONCLUSION

For the foregoing reasons, the Motion is GRANTED IN PART and DENIED IN PART, as more fully set forth above. (ECF No. 155.)

Dated this 14th day of May, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge