IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0165-WJM-MDB

CHRISTOPHER PARKER, and
RED MANGO ENTERPRISES LTD.,

    Plaintiffs,

v.

CHARIF SOUKI,

    Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION *IN LIMINE* AND GRANTING SOUKI'S MOTION TO STRIKE IN PART**

Before the Court is Plaintiffs Christopher Parker and Red Mango Enterprises Ltd.'s (jointly, "Plaintiffs") Motion *in Limine* ("Motion"). (ECF No. 182.) Defendant Charif Souki filed a response, as well as a Motion to Strike in Part ("Motion to Strike"). (ECF Nos. 195, 192.) For the following reasons, the Motion is granted in part and denied in part, and the Motion to Strike is granted.

## I. BACKGROUND

The parties are familiar with the underlying facts of this case by way of the Court's Order resolving Souki's motion to dismiss and the parties' cross motions for summary judgment. (ECF Nos. 102, 170.) The Court incorporates that background here.

## II. APPLICABLE LAW

Motions *in limine* enable courts "to rule in advance of trial on the relevance of

certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Michael v. Rocky Mountain Festivals, Inc.*, 2019 WL 10011881, at *1 (D. Colo. July 19, 2019) (citation omitted); *see also Ward v. Nat'l Credit Sys., Inc.*, 2024 WL 2846609, at *3 (D. Colo. June 5, 2024) ("Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the Parties as they prepare their cases."). Pretrial rulings, however, "are often better left until trial when the Court can assess the question and evidence presented." *Colorado Montana Wyoming State Area Conf. of NAACP v. Smith*, 2024 WL 2939163, at *2 (D. Colo. June 11, 2024) (citing *Vanderheyden v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 4131439, at *2 (D. Colo. Sept. 12, 2022)).

Whether to admit or exclude evidence is a decision that "lies within the sound discretion of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994). The moving party bears the burden of establishing that the "evidence is inadmissible on any relevant ground." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (citation omitted). Accordingly, the Court may deny a motion *in limine* if the movant fails to set out, with the necessary specificity, the evidence it wishes to have excluded. *Id.* Denial of a motion *in limine*, however, does not mean that the evidence will automatically be admitted at trial; rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion," upon a party's timely objection. *Id.* (quotation omitted).

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant

2

evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

### III.   ANALYSIS

Plaintiffs move to exclude "evidence and argument concerning (1) Plaintiffs' sources of wealth, citizenship, and wealth planning strategies used as a means to malign Mr. Parker's character; (2) the flawed legal theory that Plaintiffs could have mitigated their damages by selling the guaranteed Tellurian stock after Defendant Charif Souki breached the guarantees; and (3) the equally flawed theory that Plaintiffs could have mitigated their damages by purchasing a 'protective put' or similar product." (ECF No. 182 at 2.)

As to the first category of evidence, Plaintiffs seek to preclude Souki from presenting evidence that casts Parker's "wealth, citizenship, and wealth planning strategies in a negative light," including by

- characterizing Parker as "a multi-millionaire investor who enjoys dual citizenship in a known tax haven";
- referring to Parker's work for the British government as "'cloak and dagger kind of stuff";
- "ask[ing] about whether he had any connection to Harvey Weinstein's company" or "played in 'Molly's game'—the infamous illegal celebrity poker game that was the subject of a major picture of the same name, and

3

>  which has been in the news recently because of the similarities to recent arrests surrounding gambling in the NBA"; and
>
> - "implying that Mr. Parker established Red Mango for the purpose of avoiding taxes."

(*Id.* at 3–4.) Plaintiffs insist that "[n]one of this has anything to do with the matters to be tried," particularly because Souki's fraud defense has been dismissed from the case. (*Id.* at 4.)

The Court will permit Souki to present limited evidence about Parker's background, how and for what purpose Parker established Red Mango, and other related information, as all that provides useful context and background to the claims and defenses at issue in this trial. *See United States v. Condrin*, 473 F.3d 1283, 1286 n. 2 (10th Cir. 2007) ("Background evidence 'is universally offered and admitted as an aid to understanding.'") (quoting Fed. R. Evid. 401, advisory committee's note)).

For example, basic information about Parker's business background and interest in the liquified natural gas industry will help the jury understand why (or why not) the parties allegedly entered into a contract regarding Tellurian shares. Without that general context, the jury would be left wondering what precipitated the text message conversations in the first place. Plaintiffs do not appear to object to this ruling, clarifying that they "anticipate introducing background facts about Mr. Parker and his profile as an investor, which will include some information about his work and financial history, so the jury can understand how he came to enter into the relevant agreements with Souki." (ECF No. 181 at 4 n.7.) If this background evidence is relevant for Plaintiffs to introduce, it is relevant for Souki to explore as well.

4

The Court will preclude, however, Souki from trying to connect Parker's background to salacious issues pertaining to Harvey Weinstein, Molly's Game, and the like.  That sort of connection is irrelevant to the breach of contract issue at the core of this dispute.  Fed. R. Evid. 401.  It also risks unfairly prejudicing Plaintiffs in the eyes of the jury.  Fed. R. Evid. 403.

In sum, then, evidence pertaining to Parker's business background, his citizenship, and Red Mango's purpose are generally fair game.  But attempts to malign his character with this information are not.  If the Court senses that the volume or quality of such evidence begins to veer too far afield from proper evidentiary purposes, the parties can expect the Court to exclude it under Rule 403.

As to the second and third categories of evidence, Plaintiffs seek to preclude Souki's expert witness, Bryan D'Aguiar, from opining (1) "that Plaintiffs could have mitigated their damages by selling their indemnified Tellurian shares on certain dates in 2021 and 2022—after Souki breached the guarantees," and (2) that "Plaintiffs could have mitigated their damages through 'derivative strategies,' including by purchasing a 'protective put." (*Id.* at 4, 10.)  Plaintiffs contend that mitigation "is a completely inapplicable legal theory in this case," and is "is legally flawed and without an evidentiary foundation." (*Id.*)  As such, Plaintiffs seek to exclude D'Aguiar from offering his mitigation expert opinions at trial.  (*Id.* at 13.)

But Plaintiffs' challenge to D'Aguiar's expert mitigation opinions has come too late.[1]  Section III.H.6 of the Court's Revised Practice Standards states: "A Rule 702

---

[1] As to the practice standard problem, Plaintiffs' argue that they "did not attack the legal validity and evidentiary foundation of [Souki's] mitigation defense [at the Rule 702 phase] as this motion does."  (ECF No. 182 at 2 n.1.)  But by acknowledging that the Motion attacks the "legal validity and evidentiary foundation of [Souki's] mitigation defense," Plaintiffs effectively admit

5

motion shall **not** be styled as a 'motion *in limine*.'" (Emphasis in original.) And again: "A motion seeking exclusion of expert testimony under Rule 702 is governed separately . . . ." *Id.* § III.G.1. And perhaps most importantly: "A motion *in limine* that is a veiled motion for summary judgment may also be denied out of hand." *Id.* Yet that is exactly what Plaintiffs try to do in their Motion: preclude Souki from asserting his mitigation defense based on the alleged legal and evidentiary infirmities of D'Aguiar's proffered expert opinions.

The substance of Plaintiffs' argument illustrates the point:

> Souki's mitigation theory is legally infirm for at least two reasons. First, Plaintiffs had no duty to mitigate because their damages—on the particular and undisputed facts here—were legally unavoidable. Second, Souki's proposed post-breach sales of Plaintiffs' guaranteed shares do not qualify as substitute transactions for purposes of mitigation. As such, Souki should be precluded from introducing evidence and argument in support of his theory that Plaintiffs could have mitigated their damages by selling the guaranteed Tellurian shares after Souki breached.

(*Id.* at 4.)

Put differently, Plaintiffs contend that D'Aguiar's mitigation opinions are not a "fit" because they are not "based on sufficient facts or data." *Hafen v. Howell*, 121 F.4th 1191, 1203 (10th Cir. 2024) (quoting Fed. R. Evid. 702(b)). This is plainly a Rule 702 argument.

Notably, Plaintiffs tried to exclude D'Aguiar's mitigation opinions at the Rule 702 stage of this case, but they did not develop the argument as they do now. In a single paragraph, Plaintiffs argued that D'Aguiar's mitigation opinions were "based on pure

---

that their *limine* arguments are in reality Rule 702 arguments.

speculation" because he "did not conduct any analysis to determine whether a trading program would lead to [loss mitigation] and admitted that Plaintiffs were under no obligation to sell their shares via such a trading program." (ECF No. 155 at 9–10.) This thin argument pales in comparison to the robust arguments Plaintiffs develop, over the course of eight pages, in their Motion.

More fundamentally, these arguments also constitute summary judgment arguments in that they seek to preclude Souki from presenting a defense at trial. Yet Plaintiffs did not seek dismissal of Souki's mitigation defense at the summary judgment stage. (*See generally* ECF No. 127.) Instead, Plaintiffs focused there on Souki's statute of frauds and fraud defenses. (*Id.*) Again, "[a]n *in limine* motion is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because that is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, 2012 WL 503510, at *4 (D. Colo. Feb. 15, 2012) (citations omitted). And as previously mentioned, the Motion clearly violates the undersigned's Revised Practice Standards.

Because Plaintiffs could have raised this belatedly-developed argument at the Rule 702 or summary judgment stage, the Court declines to address it at the *limine* stage. By declining to exclude the mitigation opinions at the *limine* stage, however, the Court does not intend to suggest that it has decided that this is a viable defense by which Souki can overcome Plaintiffs' claims or otherwise decrease their damages. The Court concludes only that Plaintiffs cannot import their Rule 702 and summary judgment arguments into their Motion in contravention of the Court's Revised Practice Standards.

7

Plaintiffs can seek to challenge Souki's mitigation defense at the appropriate phase(s) of trial.

For these reasons, the Court grants in part and denies in part the Motion, and grants Souki's motion to strike the Motion to the extent it challenges D'Aguiar's expert opinions on mitigation. (ECF No. 190.) *See Carroll v. Allstate Fire & Cas. Ins. Co.*, 2013 WL 5303483, at *2 (D. Colo. Sept. 20, 2013) (striking briefs for "failure to comply with the Local Rules of the Court and Judge Martinez's Practice Standards"); *see also Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*, 2015 WL 11027596, at *1 (D. Colo. Apr. 8, 2015) (similar).

### IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. The Motion is GRANTED IN PART AND DENIED IN PART, as set forth above. (ECF Nos. 177.)
2. Souki's Motion to Strike in Part is GRANTED. (ECF No. 190.)

Dated this 14th day of November, 2025.

BY THE COURT:

William J. Martinez
Senior United States District Judge