IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00165-WJM-MDB

CHRISTOPHER PARKER, and
RED MANGO ENTERPRISES LTD.,

      Plaintiffs,

v.

CHARIF SOUKI,

      Defendant.

---

**DEFENDANT'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

After a week of trial, Plaintiffs have failed to prove *any* of their claims. Defendant Charif Souki is therefore entitled to judgment across the board and moves for such under Rule 50(a).

## LEGAL STANDARD

Rule 50(a) requires judgment for a defendant when a plaintiff "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [plaintiff] on that issue." *Murphy v. Schaible, Russo & Co.*, 2023 WL 4230599, at *1 (D. Colo. June 28, 2023). "In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party," here, Plaintiffs. *Id.*

## ARGUMENT

### I.    Failures of proof on overlapping elements defeat Plaintiffs' claims.

### A.  Plaintiffs failed to prove they promised Souki a benefit.

All Plaintiffs' claims fail because they offered insufficient evidence that they promised to retain their Tellurian stock (or do anything else) in exchange for Souki's alleged guarantee. In fact, Parker gave the opposite testimony, conceding multiple times that he *never* made that promise. Not in the text itself. Not in any conversations he had with Souki before or after it. Not on the phone, in person, or in writing. Never. That testimony is dispositive on the issue.

In addition, Parker testified—and his discovery responses confirm—that he did not speak with Souki in July or August 2019 in the lead up to the August 2019 text message.  Def.'s Trial Ex. B-14. That means there were no other communications in which he could have promised to hold onto his shares. As he put it, the texts on August 17 were the sum total of Plaintiffs' alleged agreement with Souki or, in Selman's words, the entire agreement. Any promise not to sell

- 1 -

therefore must be contained in that (unsolicited) text. There is no such promise. *See* Pls.' Trial Ex. 1.

This failure of proof dooms all of Plaintiffs' claims. The contract claims require proof of "consideration," meaning "something . . . ***bargained for <u>and</u> received*** by a promisor from a promisee." *DeFranco v. Storage Tech. Corp.*, 622 F.3d 1296, 1306 (10th Cir. 2010) (emphasis added). As the evidence is insufficient that Plaintiffs promised to retain their shares or do anything else for Souki, Souki did not "receive[]"—or even "bargain for"—anything from them. *Id.* This defeats the 2021 contract claim as much as the 2019 claim because Parker testified the 2021 agreement was merely an extension of the 2019 agreement, plus interest. Thus, because the 2019 agreement claim fails for lack of consideration, so does the 2021 agreement claim.

Plaintiffs' failure to offer anything in for the guarantee also defeats their unjust enrichment claim. With no obligation on Plaintiffs to hold onto their shares, Souki cannot be said to have "received a benefit . . . at the plaintiff's expense," much less "under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 2016 CO 64, ¶ 63.

Finally, Plaintiffs' failure to prove that they promised to retain their shares prevents them from establishing the "reasonable" and "unjustifiable" reliance elements of their promissory estoppel and fraud claims, respectively. *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006); *Granite Southlands Town Ctr., LLC v. Provost*, 445 Fed. App'x 72, 75 (10th Cir. 2011). "Reliance is not justifiable if another person of similar intelligence, education, or experience would not have relied on the alleged representation." *LBI Group, LLC v. Scanlan*, 2024 WL 3947026, at *5 (Colo. App. July 11, 2024). No person with Parker's "intelligence, education, or experience"

- 2 -

in the stock market would rely an unsolicited, unconditional guarantee with no counter-promise. It is not reasonable to expect $45 million for nothing.

### B.  Plaintiffs failed to prove the reliance elements of fraud and promissory estoppel.

Plaintiffs could not prove the reasonable or justifiable reliance elements of their fraud and promissory estoppel claims for three more reasons. ***First***, it is unjustifiable and unreasonable as a matter law for an experienced, sophisticated trader like Parker to rely on an informal text message to secure an alleged deal worth tens of millions of dollars; "another person of similar intelligence, education, or experience would not have relied on" such a representation. *Id.*; *see also Shoels v. Klebold*, 375 F.3d 1054, 1069 (10th Cir. 2004) (reliance "unjustified if the context obviously calls its accuracy into question"); *Engineered Data Products, Inc. v. Art Style Printing, Inc.*, 71 F. Supp. 2d 1073, 1079 & n.1 (D. Colo. 1999) ("[T]he magnitude and complexity of the deal reflects a practical business need to record all the parties' commitments in definitive documents.") (cleaned up). The informality and brevity of the text message and the casual context in which it was sent belie any claim that Plaintiffs' reliance was justifiable or reasonable. *See* Restatement (Second) of Contracts § 90 cmt. (1981) (promissory estoppel turns in part "on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise"). Parker, Freides, and Selman all indicated that that is not how sophisticated parties transact business—certainly not $39 million deals—as numerous courts have held. *See, e.g.*, *RCM Supply Co., Inc. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1078 (4th Cir. 1982); *Stein v. Gelfand*, 476 F. Supp. 2d 427, 436 (S.D.N.Y. 2007); *G & M Oil Co. v. Glenfed Fin. Corp.*, 782 F. Supp. 1085, 1091 (D. Md. 1991).

*Second*, it is unjustifiable and unreasonable as a matter of law to rely on unenforceable contract terms. *See, e.g.*, *Norwest Bank Lakewood, Nat. Ass'n v. GCC P'ship*, 886 P.2d 299, 302 (Colo. App. 1994); *DeMarco v. TD Bank, N.A.*, 2013 WL 12094325, at *4 (S.D. Fla. Feb. 6, 2013); *Sneed v. Am. Bank Stationary Co., Div. of ABS Corp.*, 764 F. Supp. 65, 68 (W.D. Va. 1991).The terms of the alleged guarantee(s) here were unenforceable for numerous reasons. *Supra* § I.A; *infra* §§ I.E, II. Plaintiffs therefore could not reasonably or justifiably rely on them.

*Last*, reliance on a "promise made within the context of the process of negotiating [a] contract, which would not be binding until the written document [is] signed," is likewise unjustifiable and unreasonable. *Triax Pac., Inc. v. Am. Ins. Co.*, 69 F.3d 548 (10th Cir. 1995). Here, there is insufficient evidence that any of Souki's statements were made outside "the context of the process of negotiating [a] contract." *Id.* Parker admitted as much on August 26, 2020, for example, when he told an advisor that he was "executing the contract ***this week*** for the guarantee which [he had] from [Souki]," Def.'s Trial Ex. A-34, meaning he understood his texts with Souki before then were part of negotiations and making it unjustifiable for him to rely on them. *See Triax*, 69 F.3d 548; *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1230 (10th Cir. 2022). Souki agreed, characterizing the text as a statement of intent, not a contract. Even Selman admitted that in his experience texts can provide only the seed of a larger deal that is later memorialized.

### C.  Plaintiffs failed to prove their individual damages.

Plaintiffs' contract, fraud, and promissory estoppel claims require them to prove damages or harm. *Alderman*, 2025 CO 9, ¶ 34; *Granite*, 445 Fed. App'x at 75 (10th Cir. 2011); *Simpson*, 148 P.3d at 151. To do so, they needed to prove their *individual injury*; they could not piggyback off one another. *See K-B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148, 1162 (10th Cir. 1985).

Plaintiffs have not done so. Their damages expert did not disaggregate damages between Parker and Red Mango, presenting a single number for both. Thus, these claims fail.

### D.  All Red Mango's claims fail.

#### i.  Parker's inability to act for Red Mango defeats its February 2021 claims.

All Red Mango's claims predicated on the alleged representations made in February 2021 fail because Souki made those representations to Parker, but Parker could not act for Red Mango at the time. Rather, under Red Mango's governing documents, its "business . . . shall be managed and conducted by a board of Directors."  Pls.' Trial Ex. 13 § 54; *accord id.* § 66, but Parker was not a director in February 2021. Thus, he could not bind Red Mango to any contracts, as required for Red Mango to prevail on its February 2021 contract claim, nor could he take any actions for Red Mango based on Souki's 2021 representations, including to rely on those representations, as required for Red Mango to prevail on its February 2021 fraud and promissory estoppel claims.

The first basis Plaintiffs have offered at trial to even suggest Parker could act for Red Mango is his status as Protector of the Trust. But Parker admitted under oath that the most he can do in that capacity is advise the Red Mango Directors, not act for Red Mango. That is consistent with the Red Mango's governing documents, which contain no provision authorizing the Trust or its Protector to act for Red Mango. *See*  Pls.' Trial Ex. 13.[1]

---

[1] Plaintiffs argued at summary judgment that Parker could also act for Red Mango because he had a separate business partnership with a director. But (1) there is no evidence of such a partnership; and (2) that reading of Red Mango's governing document is unreasonable as a matter of law. The cited provision—Section 62—merely permits Directors and their business partners to perform "professional services" Red Mango hires them to perform and still receive normal "remuneration." Plaintiffs' Trial Ex. 13 § 62. It does not broadly empower any partner of a director to act for the company or transform any action a partner claims to take for Red Mango into a corporate action.

Recognizing the flaw in this theory, Plaintiffs pivoted to have Parker testify that Red Mango's director in February 2021 delegated power to Parker to transact business for Red Mango involving its Tellurian shares. But Parker did not specify *when* this delegation occurred. And more importantly, nothing in Red Mango's governing document empower such delegations of authority. The most that document does is permit the Directors to collectively "delegate any of their powers to a committee *consisting of one or more directors*." Pls.' Trial Ex. 13 § 63 (emphasis added). But, again, Parker was not a director after December 2019 and thus ineligible to receive a delegation of authority under Red Mango's governing document.

Without the ability to act for Red Mango, nothing Parker did after December 2019 can be imputed to Red Mango as a matter of law, and all Red Mango's 2021 claims fail as a result.

### ii.   Souki's unawareness of Red Mango defeats its August 2019 claims.

Red Mango's contract, fraud, and promissory estoppel claims predicated on Souki's alleged promise in August 2019 fail because there is insufficient evidence that Souki knew Red Mango existed. The texts do not mention Red Mango, Souki testified he did not know of it, and Parker admitted he never told Souki about it before then. To establish a contract existed, Plaintiffs must prove the parties had a "meeting of the minds." *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 47. They cannot do that, however, because there is insufficient "evidence in the record indicat[ing] that [Souki] even knew of [Red Mango's] existence." *French v. Centura Health Corp.*, 2022 CO 20, ¶ 33. Red Mango "was not referenced in any way—even obliquely—in any of the" parties' 2019 communications, and Souki "assuredly could not assent to terms about which [he] had no knowledge and which were never disclosed to [him]." *Id.* ¶ 34; *see also Bojorquez v. Am. Bankers*

- 6 -

*Ins. Co. of Florida*, 2024 WL 4277910, at *5 (D. Colo. Sept. 24, 2024) ("If a party is not aware of an essential term, there has been no meeting of minds as to that term.").

Red Mango's fraud and promissory estoppel claims fail for the same reason. It was not justifiable or reasonable for Red Mango to rely on Souki's statements when he was unaware of Red Mango's existence. *See Shoels v. Klebold*, 375 F.3d 1054, 1069 (10th Cir. 2004); *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Nor could Souki reasonably expect to induce reliance from an entity of which he was unaware. *Simpson*, 148 P.3d at 151.

### E.   Indefiniteness defeats Plaintiffs' contract, fraud, and promissory estoppel claims.

To prevail on their contract, fraud, and promissory estoppel claims, Plaintiffs also had to prove that Souki's promise was "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. App. 1998) (contract and promissory estoppel); *see also Renfro v. Champion Petfoods USA, Inc*., 475 F. Supp. 3d 1242, 1247 (D. Colo. 2020); 37 Am. Jur. 2d Fraud and Deceit § 234 (fraud). Plaintiffs did not and could not do so.

By the terms of this text and the trial evidence, there is insufficient proof of when Souki's obligation arises, when and how it is to be paid, and what its terms are, rendering it too indefinite to support any of these claims. *Stice v. Peterson*, 144 Colo. 219, 224 (1960). Whether Parker had to tender his shares and the amount Souki was to pay in particular were particularly material terms of this contract, *see* 2 A.L.R.3d 701, but there is insufficient evidence of what that price was, a method to compute it, or what Parker's obligations were. *See Jorgensen v. Colorado Rural Properties, LLC*, 226 P.3d 1255, 1260 (Colo. App. 2010); *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1249-50 (Colo. App. 2001); 2 A.L.R.3d 701.

To determine price, Plaintiffs needed to subtract the price of Tellurian stock on the maturity date of the guarantee from the cost basis and multiply that by the number of shares guaranteed. But there is insufficient evidence for a jury to determine the maturity date or number of guaranteed shares. Plaintiffs have presented no evidence of any practice, dealings, or communications between the parties that could clarify either term nor identified any "law, presumption or custom" that could fill these gaps. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019).

The most they offered was Selman's testimony. But even he admitted there was no way to determine the precise maturity date. He *assumed* "by dec. 2020" meant December 31, 2020 but did not testify that that was the custom in the industry. In fact, he admitted it could just as well mean a different date, like the third Friday of the month,. Selman offered no insights into the industry customs or practices between the parties to reinforce his interpretation of the text. It is pure *ipse dixit* that cannot clarify the maturity date. And even if his testimony could be deemed sufficient to specify a date, Selman admitted that would not clarify the *time* the guarantee matured, testifying it could be the beginning or end of the trading day or any time in between. In a volatile market where small changes in the price throughout the day could yield massive swings in the price of the guarantee, the precise time the guarantee needed to mature was a material, yet indefinite, term that Selman could not supply.[2]

---

[2] Selman also cited the rule that contracts are to be interpreted against the drafter. This is a legal rule, not an industry custom, and only applies *after* a contract has been formed to *interpret* a contract. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 187 (2019). It cannot cure indefinite terms. *See id.*; *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 Fed. Appx. 676, 685 (10th Cir. 2001).

*Firehole River Cap., LLC v. Supurva Healthcare Grp., Inc.* does not solve this problem, either. 2021 WL 4291087, at \*6 (D. Utah Sept. 21, 2021). That case says, when a guarantee specifies a month but not day, "[t]he maturity date [can] be read as 'no later than [the last day of the month].'" *Id.* That is insufficient where, as here, the price of the relevant stock fluctuated by the day such that an exact maturity date and time was necessary. The fact that the maturity date was "no later than" December 31, 2020 does not mean December 31 *was* the maturity date, and there is insufficient evidence to conclude as much. Regardless, *Firehole*'s logic does nothing to clarify the number of shares guaranteed or whether Parker had to tender his shares. Thus, the alleged promise in the August 2019 text—the basis for all Plaintiffs' claims—is too indefinite to support them.

## II. Plaintiffs' breach of contract claims independently fail.

### A. The Statute of Frauds bars the 2019 Agreement claim.

The Court has correctly held that the Statute of Frauds applies to the 2019 Agreement but concluded fact issues existed on two of its exceptions. Neither applies.

***Judicial Admission Exception.*** The judicial admission exception does not apply for three reasons. First, Colorado courts have not adopted the exception at all, and, unlike in *Gibson v. Arnold*, 288 F.3d 1242, 1246 (10th Cir. 2002) (Oklahoma law), there is no "clear guidance from the state's highest court" that it would adopt that exception, making it improper for a federal court "to expand state law" this far. *Amparan v. Lake Powell Car Rental Companies*, 882 F.3d 943, 948 (10th Cir. 2018). The exception is controversial, there are strong reasons to resist it, and, thus, it is not clear Colorado would adopt it. *See, e.g.*, *Key Design Inc. v. Moser*, 983 P.2d 653 (Wash. 1999).

- 9 -

Second, even if Colorado courts were to adopt the exception, there is no indication they would embrace the broad version of it from *Gruen Industries, Inc. v. Biller*, which applies the exception even when an admission does "not expressly acknowledge the existence of a contract" so long as it "describe[s] conduct or circumstances from which the trier of fact can infer a contract." 608 F.2d 274, 278 (7th Cir. 1979). At most, the narrower *Gibson* view applies, requiring the defendant to "unequivocally admit[] under oath at the trial . . . that he agreed to all of the material terms of the [relevant] agreement." 288 F.3d at 1247. There is insufficient evidence of that here.

Third, even under *Gruen*, the evidence is insufficient that Souki admitted to "conduct or circumstances from which the trier of fact can infer a contract." *Gruen*, 608 F.2d at 278. His admission that he sent the August 2019 text does not support an inference of the elements of contract formation, including "legal consideration, mutuality of agreement, and mutuality of obligations." *Denver Truck Exch. v. Perryman*, 134 Colo. 586, 592, 307 P.2d 805, 810 (1957); *see also French*, 2022 CO 20, ¶ 26. Thus, even the *Gruen* exception does not apply.

***Partial Performance Exception.*** The partial performance exception applies only if the plaintiff's partial performance is "required by, and fairly referable to no other theory besides that allegedly contained within the oral agreement." *Nelson v. Elway*, 908 P.2d 102, 108 (Colo. 1995). This requirement is not met when a plaintiff's actions are "equally consistent" with either the existence of an unwritten contract or some other motivation. *Kapaun v. Weber*, 2023 WL 12057268, ¶ 32 (Colo. App. Dec. 14, 2023). There is insufficient evidence here that Plaintiffs' retention of their shares was "fairly referable to no other theory" besides their alleged agreement with Souki because other motivations, like their loyalty to and confidence in Tellurian, are "equally consistent" with that conduct. *Kapaun*, ¶ 32. Thus, this exception does not apply either.

- 10 -

Because neither exception to the Statute of Frauds applies, whether for legal or evidentiary sufficiency reasons, Souki is entitled to judgment on Plaintiffs' 2019 Agreement claim.

### B.  Plaintiffs offered insufficient evidence of mutual assent or mutuality of obligation.

Finally, Plaintiffs offered insufficient evidence of two other elements: mutual assent and mutuality of obligation. *Mestas v. Martini,* 155 P.2d 161, 167 (Colo. 1944). "Mutual assent" is not met if the parties "never reached an understanding which could be the basis of a binding [agreement]." *H. W. Houston Const. Co. v. Dist. Court of Tenth Judicial Dist.*, 632 P.2d 563, 565 (Colo. 1981); *cf. Kearl v. Rausser*, 293 Fed. App'x 592, 608 (10th Cir. 2008).

Here, the parties "never reached an understanding which could be the basis of a binding [agreement]," *H.W.*, 632 P.2d at 565, as their understandings of the communications differed. Even assuming Plaintiffs believed they were promising to retain their shares in exchange for a guarantee to make up any capital deficiency by December 2020, Souki did not share that understanding. He believed they were arranging a structured financial product and conditioned any guarantees on the deposit of the relevant shares into escrow. There is insufficient evidence that he understood he was providing a blanket guarantee in exchange for Plaintiffs' pledge not to sell their shares, a promise Parker concedes he never made and which is not reflected in the August 2019 Text.

In addition, if a party "has no legally enforceable obligations or an unlimited right to determine the nature and extent of his performance, the contract lacks mutuality of consideration and may be unenforceable." *Hauser v. Rose Health Care Sys.*, 857 P.2d 524, 528 (Colo. App. 1993); *see also Mark II Elecs., Inc. v. Dotson*, 430 P.2d 82 (Colo. 1967); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1209 (10th Cir. 2016). Even if there was sufficient evidence of a counter-promise to hold their shares from Plaintiffs (which there

is not), Mr. Selman testified it was entirely left to Plaintiffs' discretion whether to hold their shares through the guarantee period or to tender them to Souki at the end. This "unlimited right to determine the nature and extent of [their] performance" renders the contract illusory and unenforceable. *Hauser*, 857 P.2d at 528.

### III.  Plaintiffs' fraud claims independently fail.

Plaintiffs failed to prove the elements of fraud. First, "[a] promise concerning a future act" is actionable in fraud only "when coupled with a present intention not to fulfill the promise." *Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo. 1987). Plaintiffs offered insufficient evidence of "a present intention not to fulfill the promise." *Id.* There is insufficient evidence that, when Souki made the alleged promises in 2019 or 2021, he did not intend to fulfill them. *See, e.g.*, *Nelson v. Gas Research Inst.*, 121 P.3d 340, 344 (Colo. App. 2005). They have offered no evidence of contemporaneous actions, statements, or admissions by Souki to suggest such an intention nor proof that he lacked the financial capacity to pay the alleged guarantee when it was made. The most Plaintiffs have offered is a "mere nonperformance of a promise or the failure to fulfill an agreement to do something at a future time," but the intention element "requires more" than that. *Trueforce Glob. Services, Inc. v. TruEffect, Inc.*, 2022 WL 1154527, at *6 (D. Colo. Apr. 19, 2022).

Further, to the extent a contract existed, Plaintiffs are asserting "only economic loss from the breach of an express or implied contractual duty" and therefore "may not assert a tort claim for such a breach absent an independent duty under tort law." *Top Rail*, ¶ 30. Thus, if a contract exists, Plaintiffs' fraud claim fails. *See id.* ¶ 39; *Dream Finders*, ¶¶ 33-34; *supra* § I.A.

**IV.    Plaintiffs' quasi-contract claims fail.**

    **A.  Plaintiffs' promissory estoppel claims independently fail.**

Plaintiffs failed to prove the first element of their promissory estoppel claim because there is insufficient evidence that Souki made a "clear and unambiguous promise" to guarantee their shares in the manner they describe. *George v. Urban Settlement Services*, 833 F.3d 1242, 1258 (10th Cir. 2016). This is an additional requirement on top of the definiteness requirement for promissory estoppel claims. *See Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014).

The alleged promise here was not "clear and unambiguous." On the contrary, Parker and Selman both admitted the text that forms the basis for the alleged promise *is* "ambiguous," as they must, because the August 2019 text is subject to multiple interpretations with respect to at least (a) the maturity date and (b) whether Plaintiffs had to tender their shares, points Mr. Selman admitted. Accordingly, the opening requirement of Plaintiffs' promissory estoppel claim fails.

    **B.  Plaintiffs' unjust enrichment claim independently fails.**

Plaintiffs failed to prove Souki "received a benefit . . . at the plaintiff's expense." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 2016 CO 64, ¶ 63. There is no evidence they paid Souki, transferred Tellurian shares to him, or otherwise directly provided or would provide a benefit in exchange for the guarantee. Instead, Plaintiffs claim that Souki benefitted from their retention of their shares because that stabilized the Tellurian stock price, which, in turn, inflated his net worth and delayed foreclosure on shares Souki had pledged as collateral for loans. There is insufficient evidence, however, that Plaintiffs' retention of their shares actually stabilized the Tellurian stock price, that any such stabilization would have benefitted Souki in the form of

- 13 -

increased net worth, delayed collateral calls, or anything else, or that it delayed foreclosure on Souki's shares. Indeed, Plaintiffs' expert concedes he performed no analysis of whether Plaintiffs' retention of their shares stabilized or supported the stock price. And, Plaintiffs retention of their shares did not stop Souki's lenders from seizing 22 million shares when COVID collapsed the price in March 2020. Plaintiffs thus have not proven Souki received *any* "benefit," tangible or intangible, direct or indirect, at their expense.

Further, to establish the required "benefit," Plaintiffs must show a "receipt of benefits that yield a measurable increase in the recipient's wealth." *Indian Mountain Corp. v. Indian Mountain Metro. Dist.*, 2016 COA 118M, ¶ 30. This means a plaintiff must "prove the amount of [the defendant's] benefit stemming from his wrongful conduct" to avoid judgment on an unjust enrichment claim. *Advanced Recovery Sys. v. Am. Agencies*, 923 F.3d 819, 830 (10th Cir. 2019). An unjust enrichment claim thus fails if a plaintiff makes "no attempt to quantify the 'benefit' conferred upon [the defendant]," *First Data Corp. v. Konya*, 2007 WL 2116378, at *19 (D. Colo. July 20, 2007), or "present[s] no evidence of what the fair market value of [the benefit] might be," *Carr Office Park, LLC v. Charles Schwab & Co., Inc.*, 2007 WL 1686741, *10 (D. Colo. 2007). That is the case here. Even assuming their retention of their shares supported the stock price, and even assuming that support increased Souki's net worth or delayed collateral calls on his loans, Plaintiffs have not placed a numerical value on those or any other benefits Souki supposedly received. This failure defeats their unjust enrichment claim.

## V.     Any Execution of the Draft 2021 Agreement Claim Defeats All Claims.

Finally, to the extent the parties entered the Draft 2021 Agreement, that agreement defeats all Plaintiffs' claims.

*First*, the contract claims based on the 2019 Agreement or any oral 2021 agreement fail because the 2021 Draft Agreement supersedes all other agreements.  Pls.' Trial Ex. 10 § 7(d); *SCH I Historic Properties LLC v. Cripple Creek & Victor Gold Mining Co., LLC*, 2023 WL 12052002, at *4 (Colo. App. Nov. 2, 2023).

*Second*, their 2021 Draft Agreement claim fails because Plaintiffs did not perform their obligations under that agreement by, for example, tendering their shares to Souki or exercising their option in writing.  Pls.' Trial Ex. 10§§ 1-2; *McNees v. Ocwen Loan Servicing, LLC*, 853 Fed. Appx. 211, 218 (10th Cir. 2021). Mr. Parker conceded the latter point explicitly.

*Third*, Plaintiffs' promissory estoppel and unjust enrichment claims fail because an existing contract covers the subject matter of those claims. *See Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014); *Bd. of Governors v. Alderman*, 2025 CO 9, ¶ 36.

*Last*, the agreement's integration clause bars Plaintiffs' fraud claim, *see Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1083 (D. Colo. 2015), as does the economic loss rule because the fraud claim is based on the same promises as the contracts and seeks the same relief. *McNees*, 853 Fed. App'x at 215; *Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 30; *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 2021 COA 143, ¶ 34.

## CONCLUSION

For these reasons, judgment should be entered for Defendant Charif Souki on all claims.

Dated: April 16, 2026

/s/ Timothy S. McConn

Timothy S. McConn
R. Paul Yetter
Tyler P. Young
Daniel N. Nightingale
Bonnie C. Fraase
Ayla S. Syed
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, TX 77002
713.632.8000
tmcconn@yettercoleman.com
pyetter@yettercoleman.com
tyoung@yettercoleman.com
dnightingale@yettercoleman.com
bfraase@yettercoleman.com
asyed@yettercoleman.com

and

Michael L. O'Donnell
Marissa S. Ronk
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:    303.244.1800
Facsimile:    303.244.1879
Email: odonnell@wtotrial.com
        ronk@wtotrial.com

ATTORNEYS FOR DEFENDANT CHARIF SOUKI

## CERTIFICATE OF SERVICE

I certify that on April 16, 2026, a true and correct copy of the foregoing has been electronically served on all counsel of record.

/s/ Timothy S. McConn

Timothy S. McConn

- 16 -